The next case on our call is agenda number six, number 128338, the Roosevelt University, I'm sorry, William Walton v. Roosevelt University. Council, are you prepared to proceed? Yes, your honor. And again, thank you to both of you for adjusting your schedules to appear with us here today on this digital platform. I'm sure that all of us would have liked to have been in Springfield and the beautiful courthouse. These are virtual backgrounds, by the way, as they're yours. However, we have been able to adapt and change when we need to. And thank you so much for changing your schedules to participate with us today in this manner. So if you're prepared to proceed, please do. Thank you. It's an honor to be here in whatever capacity. May it please the court, counsel. My name is Jim Zuris, and I represent the plaintiff, appellant William Walton. The appellate court in this case ruled that a union could bargain away a clear, explicit statutory right guarantee to all Illinois citizens. That is the right to receive explicit written notice before a biometric collector can take biometric information. The appellate court also ruled that a union could bargain away a clear and unequivocal statutory duty on all biometric data collectors in Illinois. That before taking, disseminating, selling biometric data, it must receive explicit written consent and create an explicit written retention and destruction protocol, a duty owed to the public. The appellate court ruled this way, even though these rights, these duties are independent of and do not arise under the CBA. And that there's no term in the CBA requiring interpretation to resolve the claims in this case. This is contrary to well-established U.S. Supreme Court precedent going back several decades with the Alice Chambers case, the Lingle case, the Levitas case. The trial court correctly found that there was no CBA term that could help anyone resolve these claims. There's no terms in dispute. There's no terms to debate over. There's no terms to plaintiff must now grieve these violations, these statutory claims somehow, even though there is no CBA term to grieve. In the end, CBA, Collective Bargaining Agreement, it's a contract. There has to be some contractual basis. There is none. There would have to be an explicit waiver to work, or there has to be an explicit consent for this to work, an explicit public destruction and retention protocol. The Management Rights Clause contains none of those things. The appellate court erred. We would ask the court to answer the certified question in the negative, reverse the appellate court, and affirm the trial court. I think we need to take a step back to get a grip on the statutory claims here. They're not complicated, but they are very specific. Again, before collecting biometric data, a collector has to provide explicit written notice to the plaintiff. We say that didn't happen here. There's a specific tangible form identifying that they are collecting data and the purpose for it and the length of time under which they're going to do it. The second claim is that before collecting data, a collector must receive written consent and a release from the collectee. Again, a specific form, and the statute takes pains to say that it has to be a specific written form that has certain information, that there's an express consent to collection, storage, dissemination, sale of biometric data. Under the statute, there's only one way to consent, and verbal consent doesn't work. Generic common law consent, implied consent, none of those things work. It's either there is a document that shows express written consent, or there is not. If there is not, the statute has been violated. And the management rights clause that the defendant relies upon cannot fairly be read as itself a consent or a consent, or as a rational basis that any such consent exists somewhere. The third claim is that before collecting data, a defendant collector must create a public retention and destruction protocol. Again, there is a specific written form that has to be generated. It's not verbal. It's not implied. It's not something we can read between the lines. It either exists or it doesn't. If it doesn't, there's been a violation of the statute. Again, management rights clause, nothing in there that could be fairly construed as a public retention or destruction schedule. There's an employer's duties under the statute. It's a legal impossibility. A collective bargaining agreement cannot authorize illegal conduct. That goes to U.S. precedent and precedent by this court. In other words, a union could never agree that a collector could collect biometric data without first getting explicit consent from the collectee, or collecting biometric data without creating an express written retention and destruction protocol. With respect to whether the union did give explicit consent, express consent, on behalf of the plaintiff, under, again, decades of U.S. Supreme Court authority, we need a reasoned, factual basis to claim that the CBA, that a CBA term could answer that question. That's easy, too. It's legally and one way to consent. There has to be an explicit, signed writing. So, conceivably, a CBA could reference informed consent. There could be a provision that says the union is doing it. The union will provide a separate document, a form. It will do it on behalf of its membership. We don't have anything like that. All we have is the CBA, which says nothing about any of this, coupled with the defendant's, it's a suggestion, that's the word the Illinois Appellate Court used, a suggestion that the union consented. But the fair question is, well, what is the good faith contractual basis for the defendant's suggestion? We don't have one. There's nothing in the document. And there's no need to speculate about this because, of course, we have the actual contract. We have the agreement. We can read it. And that's what the Supreme Court, the U.S. Supreme Court directs that we do. And so we can tell if there's any reference to an explicit consent. And, of course, the defendant itself would have it if it exists. They could just show it to us. And we would also be able to see if there is a public retention or destruction protocol somewhere. Again, yes, your honor. Yet there's a whole slew of cases from the district courts here in Illinois, U.S. district courts that say otherwise. How do you respond to that? Yes, your honor. So our view of this is that it all starts with really one case, and that is the Miller decision from the Seventh Circuit going close to three years from now. The federal district courts are correctly abiding by their duty to follow the Seventh Circuit precedent. And we understand that. But we also understand, your honor, that we are not in federal court. The trial court in this case knew full well about that decision, knew full well about the standard and disagreed with it, as did a number of other Illinois trial courts. I think all of them to be confronted with this decided. We think the root of the problem, your honor, is that there was a misapprehension by the Seventh Circuit of the nature of the consent that is required under this statute. The statute is very clear that it's got to be a specific form. It's got to be in writing. It's got to be something. It might be one thing if the consent could be based, could be premised upon something like subjective determinations at the workshop, workshop norms, what the workers believe is objectively or subjectively reasonable. But that is not what this specific statute commands. It is a very specific requirement. And also, we have the benefit following the Miller decision on what has happened. We are not aware, even with the guidance of Miller, of any unionized employee, and there's lots of them out there that would have these claims, your honor, actually successfully being able to grieve this claim, even with that guidance. Because what the problem is, is that we need something to have been breached or allegedly breached by management. And there's just no basis for a union employee to be able to say through his union representative or otherwise that management has breached something in the Management Rights Clause. It flips the Management Rights Clause concept on its tail because those are really things that management has reserved for itself. In fact, all parties have reserved for management's right. They have the right to do certain things that are not, number one, otherwise covered in the CBA and are not otherwise illegal, provided those two conditions are met. These are things that management gets to do. And so that could be things like bonuses, raises, disciplinary actions, even requiring its staff to wear a blue shirt if it so chooses. But no way can a Management Rights Clause, especially one that doesn't mention anything about this, number one, authorize illegal conduct or serve as a basis for explicit informed consent when there is a written document that is required under the statutes. I hope I've answered your question. You've made a point of arguing that the issue is not timekeeping, the method that the company is using for that. But how do we separate that and the fact that it is related to the timekeeping device for the company? Is that something we should consider? Well, we can't ignore that there is a timekeeping device here that is biometric and that collects biometric information. That said, I think this is the heart of the fundamental mistake made by the Seventh Circuit, if I may. The defendant, we stipulate, is free to use any timekeeping device it wants. That is not illegal per se. It is free to use a biometric timekeeping device because that is not illegal per se. Neither this statute nor any statute regulates timekeeping devices or even biometric timekeeping devices. But the use of the time clock is not the conduct under which the plaintiff premises his complaint. The claim is the collection of biometrics without express written consent. However it does it, not because it did it using a biometric time clock, but because it did it, period. The fact that they're using a biometric time clock, does it bring it under the purview of the management clause, the broad language with respect to that? It does not, Your Honor, and it would if we were complaining about a device that was solely being used to track time. If that was the basis of the claim, that would be arguably under management rights. But when the defendant is using this device and it collects fingerprints, yes, it is collecting fingerprints to track time, but that is not the only thing it is doing. It's doing much more. It is collecting biometric data and it is doing so without express written informed consent as the statute requires. So for example, let's say the defendant- I'm sorry, let me ask you this. So the use of the biometric timekeeping device, is that something that comes under the purview of the collective bargaining agreement? On its face, if nothing else is happening, if the device is being used lawfully, absolutely. If all it's doing is tracking time, absolutely. The problem is when we have a device that is taking biometric data without informed consent. So let's say the device was being used only- let's say we had a device which was only collecting biometrics and did nothing else and the defendant collected it without a written consent. That could not fall within the management rights clause because it has nothing to do with timekeeping. It's not about a time keeping clock. But why should it change now just because the same device happens to be doing both things? One that is arguably covered under the management rights clause, timekeeping, but another that is absolutely not. So we can't make conduct that is not covered by a management rights clause, taking biometric data without consent, somehow covered by a management rights clause by tendering it to conduct that is covered by the management rights clause, namely timekeeping for timekeeping device. In other words, it shouldn't matter that the prohibited conduct happens at the same time as the arguably permitted conduct. So this is not about a time clock, timekeeping procedures. It's about a statute and conduct in failing to get expressed, written, informed consent before taking biometrics. It's an unequivocal specific duty. It is the minimum. It's the floor. And of course, CBAs can regulate floors of laws, regulations, legal regulations. And there's a line of authority that expresses that. It comes up a lot in the wage context where there's references to overtime and minimum wage. And arguably, those are establishing the floor and we need to consult the CBA to see if the CBA is meeting the floor that provides rights greater than the floor. And certainly something paralleling that could happen in the biometric data context. I suppose a CBA could be written that provides the same or more robust rights than the Illinois statute. But here we're faced with something that there's no data. No reference, by the way, even to time clocks and certainly no reference to where we might even be guided on how to answer this question. In other words, how will an arbitrator in this hypothetical scenario decide the question of whether informed consent was given by the union on behalf of its membership? What in the management rights clause will tell any in any reasonable way guide us on the answer to that question? In other words, will it lead us to find the documents which have to exist? Will it provide any guidance on whether the union consented in writing as they are required to? How is that going to work out? We just cannot grasp how that is possible. And that is what we believe is the fundamental error which has led us to where we've today. Frankly, we were quite surprised, not surprising, but we were quite surprised by the appellate court's ruling, given that we have this pretty established U.S. Supreme Court precedent to follow. And it says pretty fundamentally, all right, does it arise under the CBA? Okay, I think we all agree it doesn't. The claim does not arise from the CBA itself. It arises under Illinois statutory law. And assuming that, okay, well, is the claim is a resolution of the claim to decide if the plaintiff is right or wrong? Is it substantially dependent, is the language, on anything in the CBA? Well, we have to read the CBA to answer that question, to find out. And we do. And we did in this case. And we just had no fair notice that the management rights clause could possibly be the thing that somehow it's substantially dependent to resolve these claims. And- Counselor, may I ask just a quick question to turn the conversation slightly? How are you surprised when there is the Miller and the Fernandez case? Because- They're clearly out there. Isn't that the tension we're looking at is that the Seventh Circuit has spoken on this very issue. You may not agree with it. But those are the cases that the appellate court embraced. Certainly, that shouldn't have been a surprise. We were still surprised, Your Honor, because the trial court knew about those decisions and conducted its own fair independent analysis, which I believe is what should happen in the Illinois system. I mean, we understand the Seventh Circuit. We're not ignorant of that. We understand it. We also understand that we have this judge in this case, this trial court, and a number of others in Illinois with full knowledge of Miller, full knowledge of the standard, doing its own independent analysis, and was at a loss on how we can fairly say that there's something that's substantially dependent, that that test is somehow met, that our claims are substantially dependent on anything in the CBA. And our only explanation is what we led to, what I alluded to before, that the notion of consent was somehow misapprehended and not grasped by the Seventh Circuit respectfully. They get it right usually. We just don't think that happened here, with all respect. Again, it is an unequivocal, specific duty, not just to get consent, but to get express written consent, and to create an express written destruction and retention protocol made available to the public. And another entity that was surprised is the unions. I mean, we do have a amicus here, which I don't think there's ever been a union voice before. I don't think a union voice was present in Miller or anywhere else. The union's perspective is that the claims are not grievable through the Management Rights Clause or otherwise. They're not authorized to bargain with informed consent. They never had such authority. They never claimed to have such authority. They don't want such authority. It could expose them to liability if they had such authority. We have fundamentally just a defendant saying, either one, don't read the CBA at all, or do read it, but only to find out that there's a vague, standardized Management Rights Clause, and just kind of conclude that it's somehow in there. It's somehow, there's an express written consent in that clause somehow, and that's what we're having a hard time with, especially given that if they express consent, written consent exists. It's strikingly obvious and easy for Roosevelt to have simply showed it to us, or the trial. Counsel, your time has expired. Sorry, Your Honor. Thank you very much. Thank you, Your Honor. Counsel? Mr. Ryan? Good morning. May it please the court opposing counsel. My name is John Ryan. I represent the Defendant Appellee, Roosevelt University. The unanimous decision from the First District Appellate Court should be affirmed because the Appellate Court properly adhered to binding precedent from this court when it followed the uniform decisions from the federal courts interpreting federal law. The Seventh Circuit and over a dozen federal district court cases have uniformly held that federal labor law preempts BIPA claims arising out of the use of a time clock because the collective bargaining agreement contains a broad Management Rights Clause, and the union is the sole and exclusive bargaining agent for the bargaining unit. The Seventh Circuit first addressed the issue in a case called Miller v. Southwest Airlines. Miller v. Southwest Airlines in a 3-0 opinion held that BIPA claims for use of a scanned time clock by bargaining unit members were preempted by federal labor law under the Railway Labor Act because the union is the sole and exclusive bargaining agent for the bargaining unit, and the collective bargaining agreement contain a broad Management Rights Clause. Two years later, the Seventh Circuit again addressed the issue in Fernandez v. Carey, Inc. This time, again, in a 3-0 opinion, the Seventh Circuit held federal labor law preempts bargaining unit members BIPA claims based upon the use of an alleged biometric time clock. Counsel, I have a question. Does the existence of the collective bargaining agreement absolve the employer from the responsibility of following what's clearly laid out in BIPA? No, Your Honor. This is a matter of procedure. We're not here to adjudicate the BIPA claim or BIPA rights. Under preemption, the claim must go through... But this is a case about BIPA rights. I mean, you may not like that characterization of it, but that's what the case is about. So, I mean, my question is a lot more narrow. Assume that the collective bargaining agreement is in place and the BIPA requirements are also in place. Does the collective bargaining agreement absolve the employer from following the BIPA requirements as it relates to this employee? No, Justice Cunningham. The issue is not resolving the BIPA claim, but rather the preemption analysis takes you into the collective bargaining agreement. And since we're in the collective bargaining agreement, you need to go through the grievance procedure. Well, I have a follow-up question because I read the collective bargaining agreement. It doesn't say anything about BIPA. If the claim arises under the collective bargaining agreement, as you contend, doesn't or shouldn't the agreement say something about that? And I haven't seen that in the agreement. No, Your Honor, because the courts, if you give me one second, in State Bank of Cherry, this court's decision, State Bank of Cherry, the court set forth the standard to provide deference to the Seventh Circuit interpreting federal law. The first instance is when the federal court has not interpreted federal law, re-review the issue de novo. When the federal circuits are split, then this court decides whether to, which path to follow, which they find more persuasive. The third instance is this case, where the federal courts are uniform in their decisions. Then this court, pursuant to State Bank of Cherry, must follow those federal court decisions unless it finds those courts were wrongly decided. And what State Bank of Cherry says, in quotes, what is meant by wrongly decided in this circumstance is not merely that this court will rule it a different way, rather in giving deference to unanimous federal court opinion, we will find the federal court decisions to be wrongly decided only if the federal court decision is outside logic and reason. And continuing on, the court says to hold otherwise and not follow the unanimous federal precedent simply because we'd rule the other way would nullify the uniformity portion of our analysis. Because we find the goal of developing a uniform body of law to be important, we must accord more deference to federal court interpretations when those interpretations are unanimous. Now let me ask this question just so that we're clear when we're talking about this circuit. They were interpreting federal labor law, correct? Not the Illinois statute as such. So the issue of what does BIPA mean or not was not the issue before those courts. Rather, the issue before those courts was what does federal labor law mean? I think that's right. Can you expand on that? Can you tell us what is it that those cases talked about? Yes, Chief Justice Tyson. That is exactly what Miller and Fernandez focused on. In Miller, the court said it's not even possible, even in principle, to litigate this case without asking what did the union do? What did they agree to? And in fact, Miller said, quote, what the defendant told the union, whether it furnished the information in writing, when these things happened and what the union said or did in response are matters not in the record, not in the appellate record. And the court said they're properly not in the appellate record. And the reason being is all of those are for an adjustment board. And that was the exact holding in Fernandez versus Kerry Inc. This is about federal labor law preemption. Whether the union or excuse me. When you say federal labor law preemption, and you cite the Bank of Cherry to say that this court has already determined that we will defer to the federal courts with their interpretation of federal law, correct? I mean, that's kind of what we're about. That's what the preemption argument is about. What federal law was Miller and Fernandez talking about? Under Miller, it was the Railroad Labor Act. Under Fernandez, it was the Labor Management Relations Act, Section 301, which is the exact issue presented to this court. Tell me a little bit about that section. I mean, your view is we shouldn't be looking at we should be looking at the federal law, how federal courts have interpreted and defer to them based on our precedent in Bank of Cherry, etc. That their interpretation of their own law, their own statutes preempt our interpretation. Okay. So what is that statute? What does it say? And how does it affect the facts in this case? So under federal law, a state cannot remove a topic from the union's purview and require direct workers and management. That's a quote from Miller. And in fact, Miller said here, Illinois didn't try because Illinois under BIPA allows legally authorized representatives to provide consent. Plaintiff's argument here seeks to improperly require individual workers and management to directly bargain. What would happen here if you implement an alleged biometric time and federal labor law doesn't preempt? You have to individually bargain. So one employee will say, I want a dollar more. Another bargaining unit member may say, well, I want extra retirement benefits. Another bargaining unit member may just consent. So at that point, what happens is you don't have a collective bargaining agreement anymore. Remember, the union is the sole and agent for the bargaining unit. Here, plaintiff is attempting to usurp the role of the union because it is the union that decides whether to grieve the claim. It is the union that decides whether to resolve the grievance. It is the union that decides whether to then file suit after an arbitration. We're in essence, putting the cart before the proverbial horse here because there hasn't been a grievance procedure. Additionally, all of the arguments that plaintiff raises here today was argued in both Miller and Fernandez. I have a question. What would you contend is required for a union to consent to the collection of biometric information on behalf of its members? I have a follow-up question to that. Your Honor, the moment you ask the question of what did the union do, it falls within labor law preemption under LMRA section 301 preemption because what the unit- No, I'm asking you, what do you contend is required? I'm asking you as the representative of the defendant, what do you contend was required for the union to consent to collection of this biometric information on behalf of its members? What did the union have to do to consent to that? Well, the union could have received or could have provided written release. The union could have received a policy. Again, all this is part of union negotiations and it's highlighted by plaintiff's counsel's point about we don't know whether there's ever been a grievance because those grievances are handled behind closed doors. It never gets to court unless there's a lawsuit filed. That's the whole point. It's the union that represents these people. Sir, you haven't answered my question. Your whole argument is based on the fact that this was all in the collective bargaining agreement. The union's already agreed to this, so this plaintiff has no individual right to bring this claim. I'm just simply asking, can you show me where in the collective bargaining agreement it says that? Yes, Your Honor. As the appellate court correctly held, it is in the management rights clause in the direction of the workforce language. The management rights clause here is broader than in those cases in federal court. It's broader than what we had in Miller and Fernandez. The management rights clause here in this case also has the union operating as the sole and exclusive bargaining agent. In fact, there has been another claim involving SCIE Local 1 in federal court in a case called Carmian. In that case, the court held that, again, LMRA Section 301 preempted the claim. We're not here to litigate whether there's a BIPA claim. That's not federal labor law preemption. It's simply that this case has to go through the collective bargaining agreement. Since it's got to go through the collective bargaining agreement, it needs to go through the grievance procedure. This court's authority in State Bank of Cherry says we defer to the federal courts. The federal courts on this have been unanimous. The only time we do not defer to the federal courts on this issue is if we find that those decisions were outside logic and reason. I heard plaintiffs argue for 20 minutes today and it said disagreed with it. I never heard the phrase outside logic and reason. I have a question for you, Mr. Ryan, regarding the fact that this employee comes in and they're not automatically a member of the bargaining unit, but they are automatically subjected to the scan. What is the right of that employee under your scenario that this is exclusively has to go through arbitration, has to go following the CBA and the management clause? For that employee, where do they fall? Two things, Your Honor. First, the collective bargaining agreement doesn't just apply to union members. It applies to everybody within the collective bargaining unit. Plaintiff falls within the collective bargaining unit on day one because as the opening paragraph of the CBA says, it covers wages, hours, and working conditions for security employees who are now or may hereafter be represented by the union. It also discusses wages, hours, and benefits. Specifically, what provision of the BIPA Act covers those? The scanning itself is not what is at issue. It has to be coupled with how it's covered by what you just said, the wages and benefits. Well, to go back to Justice Holder White's point about you can't separate out the time clock itself from the potential claim of a BIPA claim. Plaintiff agrees that we can input this time clock under the management rights clause. Where this is in conflict with federal law and federal labor preemption is that plaintiff's argument is that he's trying to require individual bargaining. You cannot require individual bargaining because the union is the sole and exclusive bargaining agent. Additionally, Your Honor, I'd like to make this point. Plaintiff conceded at the appellate court that there is no legal or factual circumstances upon which to distinguish Fernandez. Additionally, plaintiff acknowledged that Fernandez and the other federal court decisions address the same factual and legal issues raised in the appeal. That's at paragraph 18 and 22. Plaintiff can't change those admissions now because they are not factually or legally distinguishable. Additionally, even if he tried to, his own case law says it was waived and that citation is Hammond v. North America Specialist Court, which plaintiff cites at page 18 of his reply brief, wherein the court held, quote, an appellee in appellate court, parentheses, plaintiff here may raise issues in this court which were not presented to the appellate court to sustain the judgment of the trial court. However, he is required to defend against questions raised in the issues presented by the appellant in the appellate court. Here, defendant did raise the issue in the appellate court, but plaintiff failed to respond. As evidence and oral argument, plaintiff admitted to this fact. The issue was therefore waived. So we can't distinguish Miller or Fernandez because plaintiff has conceded that they are factually on all fours with this case. Mr. Ryan, you argue that the employer's use of the biometric timekeeping device is within the scope of the management rights clause. Can you provide an example of a term of employment that would be outside the scope of the CBA so that federal statute would not preempt the state law? Your Honor, I believe plaintiff brought up the wage hour or retaliatory discharge. With wage and hour, it sets a floor, right, so that if you're at $15, the union and the employer cannot consent to go below the floor to make it $14 because it's a non-negotiable right. Here, it is a negotiable right, as plaintiff admitted, because we all agree that we can put in the time clock. Additionally, a retaliatory discharge claim, this is how Miller distinguished retaliatory discharge claims would do not fall within the rights within federal labor law preemption, and that is because it's not common to all bargaining unit members. It's person-specific. Here, this is not person-specific. It's rather common to all bargaining unit members. Again, this appeal rests upon federal court law. In fact, it's right in the certified question, whether federal labor law preempts the claims. Federal court has held federal labor law does preempt the claims if there is a broad management rights clause and the union is the sole and exclusive bargaining agent for the bargaining unit. Here, we have both, and pursuant to Bayh State Bank of Cherry, this court must defer to the federal court rulings unless it finds those decisions are outside logic and reason. In order to get there, it needs to find that two panels, two unanimous panels from the Seventh Circuit were outside logic and reason, over a dozen district court decisions were outside logic and reason, and the unanimous decision from the appellate in this case were outside logic and reason. None of those decisions are outside logic and reason because they follow federal court law, and federal court law says you cannot require union and a private employer to directly and individually bargain with bargaining unit members. That usurps the whole entire process of a collective bargaining agreement. For those reasons, we ask that the court affirm the appellate court's ruling and answer the certified question in the affirmative. Thank you. Thank you, counsel. And Mr. Zuras, I'm going to ask the question of you. Let's focus on what we're doing here. We're answering a certified question, and the certified question, as far as I understand it, directs us to the issue of preemption. Does federal labor law preempt this claim? So that's what we're talking about, not the nature of BIPA or any other aspect of BIPA. The question before us is very narrow. It's about preemption. It's about the relationship of federal labor law and the state statute. In fact, that's exactly how the appellate court here set out the issue. Whether or not a claim under Illinois' Biometric Information Privacy Act was preempted by the Labor Management Relations Act. So could you narrow your argument here to explain to us why the federal statutes, as they've been interpreted by the federal courts, why they do not preempt this claim? That's the question before us. Okay. I think the way you have articulated the question before the court is absolutely correct. But it's still on a case-by-case basis. There still has to be a- Counsel, let's go back and talk about 308. 308 is not a case-by-case basis. We're being asked to answer an abstract question that is way beyond case-by-case. We're asked to decide whether or not federal labor law preempts the claim under BIPA. Not this case, not these facts. This is a legal question that we're being asked to decide. That's what a 308 is. Yes, Your Honor. We understand. So you've BIPA claims? Yes, it can. It can. What our position here is that it has not in this case. Sorry, Your Honor. Come back. We have to answer this question. Do we say yes or no to this question, this abstract question? That's what's before us. This is not about the specifics of how the fingerprints were used, the time clocks. We're here to answer this abstract question under a 308. So do we say yes or no? That's what we're being asked to do. No, literally, literally, we have to say yes or no. Right. Well, the answer has to be, has to be no as phrased. And perhaps this is a result of the question being- Let's talk 308 language. Let's talk 308 language. Let's talk like lawyers here. So are you objecting to the manner in which the question was phrased? No, we are not, Your Honor. We're simply saying that we never saw the question as being amenable to being interpreted as sort of a global catch-all question. And I guess now, now that we are talking about it, I understand the court's concerns. I mean, that's what a 308 is. It takes it out of the facts of the case and is an abstract question. And I found that the exact question, this is the 308. Does section 301 of the LMRA, the federal statute, preempt BIPA claims asserted by bargaining unit employees covered by a CBA, not the CBA, any CBA. This is an abstract question, relationship between federal law and state law. Can you address that abstract question? Well, yes, Your Honor. So our response to that question is no. It cannot, Your Honor. Counsel, I have a simple question for you. Your opponents is Miller and Fernandez covering this case. In your opinion, are they outside logic and reason, those two decisions? Yes. Yes, Your Honor. We do. And we agree with the trial court's assessment of that because again, the trial court was armed with knowledge of those cases, but also armed with the standard that has been in place by the U.S. Supreme Court for, we believe, over 40 years. And using that established test concluded, and again, based on the view of the CBA, this CBA and the language contained therein, and the defendants, you know, not able to cite a specific reasons language that would ignite some basis to be able to answer the questions that are actually at issue in this case. The claims that are actually at issues in this case, the trial court ruled that preemption, there was no basis for preemption. Other trial courts in Illinois saw it the same way. We also don't agree that there's genuine uniformity in federal court as such, because again, district courts are following binding precedent of the Seventh District Courts ruling the same way without, shall we say, binding precedent that they're required to follow by the Seventh Circuit. That would be one thing. Here, it really comes down to Miller. It starts... And Hernandez, and I'm sorry, but I'm trying to kind of narrow our test here. It seems to me our test is to answer this question. So therefore, we have to figure out what federal labor law is, and then we have to figure out, does it preempt? And we understand Bank of Cherry has told us the tools we use to decide whether or not to decide whether state law or the federal law applies. And we know that we've heard the argument about what happens when there's a split of authority in the federal court, where there's no authority in the federal court. But here, sitting where we are, the Seventh Circuit has twice now reaffirmed its strong statement that federal labor law preempts a BIFA claim. We've been told the only way that we can reject that is if we say it's outside reason. So explain to us why Miller and Hernandez are outside the realm of reasonableness. Because they rely on the same notion that a management rights clause, something that has been standardized and has existed in CBAs now for many decades, predating the enactment of the BIFA statute, by the way, that that thing is either one, the informed consent, the written informed consent that is required under the BIFA statute. It is of that document is a basis, which we say is legally impossible, or that that somehow serves as some waiver, which is also legally impossible because the waiver would have to be explicit. And it goes back to the need to have a express written documents to express written documents on on the written informed consent. So and it'd be very simple to produce it. Here it is. Mr. Walton, his authorized agent, the union did it. Great. And here it is. Or here is a public retention and destruction protocol. Here it is. It was done. It would save all of us a great deal of time if we were shown those things which do not exist anywhere. And they're not in the CBA. They're not. There's no reference in the CBA saying go look for them in this location or anything like that. And for those reasons, yes, we believe those two decisions are outside logic and reason. And this court, yes, there's deference, but that's not binding on this court, of course. The court has to make its own assessment. And we get it. We understand that those cases are out there. But this is the Illinois system now. This is going to have an effect on this court's jurisprudence. Jurisprudence in Illinois. I think it is fair to say, well, if this is in there, if this is preempted based on a management rights clause, then what is this? What is now not going to be preempted? What claim against an employer will not be? Counsel is struggling to come up with an example. He's saying, well, if there's a floor in there, if there's a floor on the CBA, well, that's right. There is no floor, though, in the CBA for BIPA claims. In fact, there's no mention of it whatsoever. If there were, that might make sense. But all we have is this management rights clause that we're being told somehow express written consent is in there. And that is just something that we, yes, we do believe that that is outside logic and reason. Respectfully, we just don't think that was fully appreciated by the Seventh Circuit, Your Honor. This effectively does end the claim based on the appellate court's ruling, by the way. It's not just a matter of shifting forums. These claims can't be breached. And that's because the issue, the claim, the CBA cannot be breached. There's nothing to point to that the employer did wrong in the document. It's a contractual thing. And that's also, I think, not fully appreciated by the Seventh Circuit. I think that's another reason it's outside logic and reason. So we would respectfully ask the court to answer the question in the negative and reverse the appellate court and hold that the trial court accurately and correctly ruled that there is no preemption. Thank you, counsel. This case, Walton versus Roosevelt University, agenda number six, number 128338, will be taken under advisement. Thank you again, counsel, for participating in this Zoom hearing.